UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


CARLOS GONZALES                                            CIVIL ACTION

VERSUS                                                     NO. 09-137

DARREN BRAZLEY, et al.                                     SECTION  "N" (3)


**ORDER and REASONS**

Before the Court is the **Motion for Judgment on the Pleadings (Rec. Doc. 27)** filed by Defendants New Orleans Law Department ("the Law Department"), New Orleans City ("the City"), Darren Brazley ("Brazley"), Dan Anderson ("Anderson," the two together known as "the Officer Defendants"), Warren Riley ("Riley"), Penya Moses-Fields ("Moses-Fields"), Ray Nagin ("Nagin"), and the New Orleans Police Department ("NOPD"), and opposed by Plaintiff Carlos Gonzales ("Gonzales"). Also before the Court is the **Motion for Summary Judgment (Rec. Doc. 12)** filed by Defendant Greater New Orleans Federal Credit Union ("GNOFCU") and also opposed by Plaintiff. After considering the memoranda, the exhibits, the Complaint (as amended

by the Order of June 3, 2009 (Rec. Doc. 26)), and the applicable law, the Court rules as set forth herein.

## I. BACKGROUND

On May 10, 2008, Carlos Gonzales was moving furniture in the offices of an attorney, Keene Kelly, at 2812 Canal Street in New Orleans. Kelly's offices occupied an upper floor of the building while below was the lobby and offices of GNOFCU. The credit union's offices were closed for construction, though the drive-in window was open for business. On that day, Brazley was working as a security guard at GNOFCU under an arrangement with NOPD that provided off-duty police officers for security. Plaintiff came down a back stairwell common to all tenants in the building and, spying a furniture dolly inside the lobby, went to grab it to use upstairs. He was confronted by Brazley, who told him to return the dolly. What happened next is a matter of sharp dispute, but there was apparently a confrontation between Brazley and Gonzales, either before Gonzales surrendered the dolly or after, and Brazley eventually arrested Gonzales for disturbing the peace. Gonzales alleges that Brazley used excessive force in the arrest, causing him serious injury. Brazley called for a supervisor and Officer Anderson appeared on the scene. Gonzales was detained on-site briefly and was issued a summons signed by Brazley to appear in Municipal Court on the "disturbing the peace" charge.

Trial in Municipal Court was set for July 22, 2008, but because of Brazley's failure to appear, the charge was *nolle prosequied*. The next day, the charge was reopened and a new charge of resisting arrest was added by the Assistant City Attorney, the new charge scribbled in on the court record of Gonzales's summons. Gonzales alleges that the charge was reopened in retaliation for a report Gonzales filed with New Orleans Public Integrity Bureau after Brazley conferred with Assistant City Attorney on the 23rd. Gonzales eventually pled *nolo contendre* to

the disturbing the peace charge and received a 30-day suspended sentence, while the charge of resisting arrest was dismissed. Gonzales filed suit in this Court on January 16, 2009, asserting various federal claims under 42 U.S.C. § 1983 for deprivation of constitutional rights and, additionally, various tort claims under state law.

## II. ANALYSIS

**A. Legal Standards**

    <u>1. Rule 12(c) Standard</u>

The standard for a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is the same as a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6). *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002). Under that standard, the Court accepts all well-pleaded facts in the complaint as true and liberally construes all factual allegations in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Lowry v. Texas A & M University System*, 117 F.3d 242, 247 (5th Cir. 1997). The Supreme Court has recently had occasion to revisit the Rule 12(b)(6) standard in ways that are relevant to the Court's consideration of the instant case, and the Court finds it useful to quote at length:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.*] *Twombly*, [550 U.S. 554 (2007)] the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A

3

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 550 U.S. ---, 129 S.Ct 1937, 1947-49 (2009) (internal citations and quotations omitted).

        2. Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S.

at 324; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075. Rather,

a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

**B. Motion to Dismiss**

It is difficult to determine the precise nature of Gonzales's claims from his Complaint, but it appears that he brings, first, a garden-variety § 1983 claim for the exercise of unlawful force against the officer Defendants and against Riley, apparently in his official capacity as police chief. *See* Compl. at ¶ 5.[1] Second, he brings state law and federal § 1983 claims for false arrest and malicious prosecution against, at various points in his Complaint, the officer Defendants and Riley, *id.*, and NOPD, the Law Department, and the City, *id.* at ¶ 7. Underlying these claims is a general factual allegation that the officer Defendants, Riley, Nagin, the City, and NOPD engaged in a conspiracy to forestall his civil rights claim by adding a belated and false accusation of resisting arrest to his charge for disturbing the peace, then using that later charge to pressure him into pleading guilty to the disturbing the peace charge, thereby "fraudulently setting up a situation in which petitioner's valid claims could be challenged pursuant to the Supreme Court's ruling in *Heck v. Humphrey* . . . ." Compl. at ¶ 9. Gonzales further alleges that the Law Department participated in the conspiracy described. *Id.* at ¶ 10.

---

[1] In the same paragraph of his Complaint, Gonzales also names Moses-Fields as a Defendant who caused him "to be assaulted and severely injured without legal justification . . . ." Compl. at ¶ 5. The Court is not aware of any legal theory under which Moses-Fields could be cast in judgment for Gonzales's injuries and presumes that the Complaint alleges that Moses-Fields is responsible for the second injury alleged in that paragraph (and repeated elsewhere in the Complaint), that she caused him to be "falsely accused of and maliciously prosecuted for fabricated criminal charges . . . ." *Id.* The confusion highlights the difficulty of interpreting Gonzales's complaint, which is vague, generalized, repetitive, and distinctly unclear as to what allegations are brought against whom.

Gonzales does not, in these cited paragraphs, specifically name Moses-Fields as a member of the conspiracy. However, in other paragraphs he does allege that Moses-Fields—along with other Defendants—was among those who caused him to "be falsely accused of and maliciously prosecuted for fabricated criminal charges in a systematic attempt to avoid responsibility for violations of Petitioner's civil rights," *id.* at ¶ 5, and the Court proceeds as if Moses-Fields is among the alleged participants in the conspiracy. Finally, Gonzales brings a claim for municipal liability pursuant to *Monell v. Dept. of Social Services of New York*, 436 U.S. 658 (1978), against NOPD, the Law Department, and the City on what seems to be two grounds: their policy and practice of using unconstitutional force, and for "ratifying" the use of unconstitutional force through their participation in the alleged conspiracy. The instant motion bears upon the second and part of the third of these claims.

### 1. State Law Claims for False Arrest and Malicious Prosecution

The Court turns first to the claims pursuant to both state and federal law for false arrest and malicious prosecution, arising from his charges for disturbing the peace and, later, resisting arrest. While the Defendants have moved to dismiss the state claims, in their brief they lump the state and federal claims together, essentially arguing that the same standards apply to both on a motion to dismiss. Plaintiff's opposition takes the same approach. Yet the standards governing these two types of claims are different, and the Court finds that the argument on the state law claims is not well-developed enough to permit it to consider these claims on the instant motion. Accordingly, the Court denies the motion as to all state law claims without prejudice as to the Defendants' ability to re-urge the motion at a later date or move the Court to decline to exercise

7

its supplemental jurisdiction over these claims should the federal claims in this matter be dismissed.

2. Section 1983 Claims for Malicious Prosecution

Regarding Plaintiff's federal claims for malicious prosecution as to both the charges for disturbing the peace and resisting arrest, the motion must be granted and the claims dismissed for the simple reason that in this Circuit there is no federal § 1983 cause of action for malicious prosecution. *See Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003).

3. Section 1983 Claims for False Arrest

*i. Section 1983 False Arrest Claim as to Disturbing the Peace Charge*

There remain Plaintiff's two § 1983 claims for false arrest as to the charges for disturbing the peace and resisting arrest. The Court first considers the § 1983 false arrest claim that arises from Plaintiff's disturbing the peace charge. "[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). To prevail on a false arrest claim a plaintiff must show there was no probable cause for the arrest. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009). While there is some argument in the briefs concerning the effect of Gonzales's *nolo contendre* plea to the disturbing the peace charge, it is clear that this plea, and his waiver of constitutional rights executed as part of that plea, *see* Compl. at Ex. F, preclude any federal § 1983 claim

8

arising from this charge, since the plea constitutes an acknowledgment of the arrest's validity. *See State v. Kennedy*, 974 So.2d 203, 207 (La. App. 2008) ("A validly entered guilty plea, or plea of *nolo contendere*, waives any right a defendant might have had to question the merits of the state's case and the factual basis underlying the conviction."); *see also State v. Despanie*, 949 So.2d 1260, 1266 (La. App. 2007) (same); *State v. Johnson* 893 So.2d 945, 950 (La. App. 2005) (same); *State v. Brooks*, 882 So.2d 724 (La. App. 2004) (same), *writ denied*, 896 So.2d 30 (2005).[2]

### ii. Section 1983 False Arrest Claim as to Resisting Arrest Charge

The analysis is different as to Gonzales's federal claim for false arrest arising from his charge for resisting arrest, since this charge terminated in a dismissal and thus the claim is not *Heck*-barred. Defendants argue that this charge was added by the Assistant City Attorney, not a defendant here, who is absolutely immune from suit under § 1983. Plaintiff does not dispute this fact but rather alleges that the Defendants in this case participated in a conspiracy to pressure him into giving up his constitutional claims by adding an additional and unwarranted charge of

---

[2] Plaintiff argues that it is settled Louisiana law that "a plea of no contest cannot be utilized as a guilty plea in a subsequent civil litigation," Opp. at 20 (Rec. Doc. 39), citing to *Williams v. Regional Transit Authority*, 546 So.2d 150, 160 (La. 1989). This overstates the holding of *Williams* and similar cases. *Williams* involved a civil plaintiff who sued a municipal entity for worker's compensation after he developed post-traumatic stress subsequent to being wrongfully arrested for stealing streetcar fares. The no-contest plea in that case was on an unspecified charge related but not central to the subsequent civil case, and the case turned on whether the arrest and subsequent injury was a "risk of employment" arising from the plaintiff's course of employment for purposes of worker's compensation. Further, the Louisiana Supreme Court was at pains to distinguish the case from "a tort action for false arrest or malicious prosecution, where the initial focus is upon whether or not the criminal charges are supported by probable cause . . . ." *Id.*

9

resisting arrest, then agreeing to drop the later and more serious charge if he pled guilty to the original charge.

Plaintiff cites no case law in support of his argument that, even if true, this alleged conspiracy supports a claim under § 1983 for false arrest. Nor has the Court been able to find any such support for this argument. The Court notes that it is undisputed that Plaintiff was represented by counsel when he agreed to plead guilty to the charge of disturbing the peace and that he was advised by counsel to accept the deal offered him. Further, while the Plaintiff specifically pleads that Officer Brazley met with the Assistant City Attorney and that this meeting resulted in the allegedly unconstitutional charge of resisting arrest, he does no more than allege, without factual particularity, how the other defendants in this case participated in the conspiracy. It is hardly surprising—and certainly no indication of a conspiracy—that a police officer and prosecutor would meet to discuss a charge and that a prosecutor may, in his or her discretion, choose to bring additional charges against an accused based on the officer's description of the events in question.[3] The Court is hesitant to allow a plaintiff to make an end-run around prosecutorial immunity by creating a federal cause of action under § 1983 for *conspiracy* to cause a false arrest.

The Court's dismissal of this claim need not rest on such unplowed grounds, however, since it concludes that there is no cognizable § 1983 claim for false arrest when a criminal

---

[3] This is not to conclude, however, that Plaintiff could not prove the allegations in the Complaint and that, if proven, such allegations would not be relevant to a state law claim against Officer Brazley and others for false arrest and/or malicious prosecution. In light of its denial of the motion without prejudice as to the state law claims raised in the Complaint, the Court takes no position on this question.

defendant is not arrested and detained, but instead is merely summoned to appear in court to answer charges without additional restriction. Central to a § 1983 claim for false arrest is a "seizure" of the defendant's person, in violation of the Fourth Amendment. *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989). "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement, through means intentionally applied[.]" *Brendlin v. California*, 551 U.S. 249, 254 (2007) (citations and internal quotation marks omitted); *see also California v. Hodari D.*, 499 U.S. 621, 627-28 (1991) ("A person has been seized within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (citations and internal quotation marks omitted)).

In *Evans v. Ball*, 168 F.3d 856 (5th Cir. 1999), the Fifth Circuit noted that a "summons, *coupled with . . . additional liberty restrictions . . .* , may constitute a seizure under the Fourth Amendment." *Id.* at 861 (emphasis added). The obvious implication of this language is that without additional liberty restrictions, a summons may not constitute a seizure, though the Circuit has never explicitly stated so. *Evans* was decided in the context of a § 1983 suit for malicious prosecution and to that extent was overruled by *Castellano*, but the Circuit's discussion of when restrictions on a criminal defendant are so onerous as to constitute a "seizure" remain valid and applicable to Plaintiff's claim for false arrest. At least one section of this Court has concluded that a mere summons without additional liberty restrictions is not such a seizure, *see Matherne v. Larpenter*, 54 F. Supp. 2d 684, 686-87 (E.D. La. 1999), though again in the context of a malicious prosecution claim.

The overwhelming weight of persuasive authority from other circuits, however, suggests that a mere summons does not constitute a seizure sufficient to support a § 1983 claim for false arrest. *See, e.g.*, *Bielanski v. County of Kane*, 550 F.3d 632, 642 (7th Cir. 2008) ("No court has held that a summons alone constitutes a seizure, and we conclude that a summons alone does not equal a seizure for Fourth Amendment purposes. To hold otherwise would transform every traffic ticket and jury summons into a potential Section 1983 claim."); *Martinez v. Carr*, 479 F.3d 1292, 1299 (10th Cir. 2007) ("[T]he issuance of a citation, even under threat of jail if not accepted, does not rise to the level of a Fourth Amendment seizure. . . ."); *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005) ("[T]here could be no seizure significant enough to constitute a Fourth Amendment violation . . . [when plaintiffs] were only issued a summons; they were never arrested; they never posted bail; they were free to travel; and they did not have to report to Pretrial Services."); *Karam v. City of Burbank*, 352 F.3d 1188, 1194 (9th Cir. 2003) (A requirement to appear in court "was no more burdensome than the promise to appear a motorist makes when issued a traffic citation"); *Britton v. Maloney*, 196 F.3d 24, 29-30 (1st Cir. 1999) (issuance of a summons requiring plaintiff to appear in court is insufficient to establish a Fourth Amendment seizure), *cert. denied*, 530 U.S. 1204 (2000). The Court concludes that merely being issued a summons to appear, absent other liberty restrictions, is not a seizure within the meaning of the Fourth Amendment and will not support a § 1983 claim for false arrest.

### 4. *Monell* Claims for Municipal Liability

Because the Court has concluded that neither the officers nor the other individual defendants violated Plaintiff's constitutional rights as to his charges for disturbing the peace and resisting arrest, the *Monell* claims against the City, the Law Department, Nagin, and NOPD must

also be dismissed. *See Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006) (noting that "it is facially evident" that a *Monell* claim for municipal liability cannot be maintained in the absence of a constitutional violation by an officer).[4]

**B. Motion for Summary Judgment**

Greater New Orleans Federal Credit Union moves for summary judgment on grounds that it is not responsible for any of the alleged torts of its independent contractor, Officer Brazley. It is well-established in Louisiana law that a principal is not liable for the torts of an independent contractor committed in the course of performing his contractual duties. *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 379 (5th Cir. 2001) (citing *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 549 (5th Cir. 1987); *Triplette v. Exxon Corp.*, 554 So.2d 1361, 1362 (La. App. 1989)). There is an exception to this rule: A principal may be liable if it maintains operational control over the activity in question. *Id.* In determining whether the exception applies, a court must look to the totality of the circumstances, but the single most important factor is the right of the employer to control the work of the employee. *Hillman v. Comm-Care, Inc.*, 805 So.2d 1157, 1163 (La. 2002); *Murray v. Option Care*, 801 So.2d 1203, 1204 (La. App. 2001). The burden of proof lies with the party seeking to establish an employer-employee relationship. *Hillman*, 805 So.2d at 1163.

In the instant case, GNOFCU submitted an affidavit from its president, Janet Sanders, who attests that the credit union did not contract with Officer Brazley specifically, but only with NOPD, which had discretion to choose which officer would work the shift; that the only request

---

[4] This conclusion does not bear upon the *Monell* claims arising from Plaintiff's claims against the officers for excessive use of force.

was that the officer keep the premises "safe"; and that GNOFCU did not train or supervise Brazley and issued no guidelines or procedures governing his conduct. Mot at. Ex. 1 (Rec. Doc. 12). It seems to be undisputed that he was not a regular employee of GNOFCU and that he was paid as an independent contractor. *Id.* at Ex. 2 (Brazley 1099 form). On this basis, GNOFCU argues that it had no right to control Brazley's activities.

In response, Plaintiff does not dispute these allegations but rather makes two arguments. First, Plaintiff argues that "the relationship between defendants Brazley and GNOFCU was closer and more complex than that of a business owner and an independent contractor." Opp. at 2 (Rec. Doc. 26). Specifically, Plaintiff points to the fact that Officer Brazley is married to an employee of GNOFCU and that Brazley "coordinated the [security] detail," and was paid an extra hundred dollars for doing so. *Id.* at Ex. C (Dayle Brazley deposition, p. 22). The facts, Plaintiff argues, point "to more reliance on Officer Brazley than on a typical employee of an agency providing independent contractors for security." Opp. at 6.

In fact, they do not. The extent of Brazley's activities as the officer who "coordinated the detail" at GNOFCU are largely unknown, but even giving the facts their most expansive reading—as the Court must do on a motion for summary judgment—Plaintiff has not alleged any fact which, if proven, could cause a reasonable factfinder to conclude that GNOFCU had any control over Brazley's work on the security detail, that the NOPD did not have full discretion to chose which officers would work the detail, or that he was anything other than an independent contractor. Even the additional hundred dollar payment to Brazley is consistent with nothing more than an extra payment to a crew chief or head contractor, and no reasonable factfinder

could conclude from this payment that GNOFCU controlled Brazley's actions or had authority over his mission or that GNOFCU was somehow intertwined with NOPD.

Plaintiff's second argument turns the first on its head by contending that GNOFCU's failure to instruct Brazley constituted the negligent breach of a duty to Plaintiff. Plaintiff argues:

> GNOFCU negligently set up a banking institution in a situation in which tenants and their guests, construction workers, deliverymen and other members of the public could walk into the construction area in which the credit union operated freely and without warning that the area was considered off-limits in any way. In those unusual circumstances, plaintiff contends that it was negligent of GNOFCU not to give its employees and the security guards . . . some instruction as to how to deal with the comings and goings of the building tenants and their guests and others who might wander into the credit union's area in the belief that it was an unoccupied or common area.

*Id.* at 10. Plaintiff cites to a number of Louisiana cases involving a business owner's failure to provide security, or negligent provision thereof, on business premises. All of these cases employ standard duty-risk analysis to determine a business owner's liability to a business invitee for assault by a third party, which is not on all fours with the instant matter, since Gonzales was not a business invitee and was not assaulted by a third party. *See, e.g.*, *Bezet v. Original Library Joe's, Inc.*, 747 So.2d 77, 84 (La. App. 1999); *Panyanouvong v. T & H Convenience Store, Inc.*, 734 So.2d 9, 12 (La. App. 1998); *Romaguera v. Piccadilly Cafeterias*, 648 So. 2d 1000 (La. App. 1994). Further, it is hardly creditable that GNOFCU had a duty to instruct a trained police officer not to unlawfully assault persons found on its premises, which is what Plaintiff claims occurred. Plaintiff's reasoning seems to be that had GNOFCU posted signs on its back door—which gave on to a common building stairwell—warning passers-by not to enter the construction area in GNOFCU's lobby, then Plaintiff would not have entered the area and gotten

15

into the confrontation with Brazley that led to the allegedly unlawful assault and his injuries. Opp. at 8-10.

Under Louisiana law, the four-part duty-risk analysis is well-settled: (1) Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, *i.e.*, was it a cause-in-fact of the harm which occurred? (2) Did the defendant owe a duty to the plaintiff? (3) Was the duty breached?(4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?, *i.e.*, Was the breach of duty the legal or proximate cause of the damage? *Roberts v. Benoit*, 605 So.2d 1032, 1042 (La. 1992). The plaintiff has the burden of proving every essential element of his case by a preponderance of the evidence. *Jordan v. Travelers Insurance Company*, 245 So.2d 151 (La. 1971); *see also* Prosser, TORTS, § 41, p. 269 (5th ed. 1984). Proof by direct or circumstantial evidence is sufficient to constitute a preponderance, when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not. *Jordan*, 245 So.2d at 155; *Town of Slidell v. Temple*, 164 So.2d 276 (La. 1964).

Not every act leading up to an injury can be said to be a cause of an injury; rather, the act or acts taken as a whole must be more probably than not a substantial factor without which the injury would not have occurred. *Laird v. Travelers Ins. Co.*, 267 So.2d 714, 717 (La. 1972); *Hauck v. Facility Mgmt. of La., Inc.*, 637 So.2d 1154, 1156 (La. App. 1994). "Proximate cause" is cause "which immediately precedes and produces the effect, as distinguished from remote, mediate, or predisposing cause," or cause "from which the fact might be expected to follow without the concurrence of any unusual circumstance." *Beard v. Coregis Ins. Co.*, 968 So.2d 278, 283 (La. App. 2007) (citations omitted). "'Proximate' cause primarily inquires whether a

party's duty extends to the particular risk in question that causes injury to another party in a tort action." *Id.* (citing *Frost v. Albright*, 460 So.2d 1125, 1127 (La. App. 1984), *writ denied*, 462 So.2d 1266 (La. 1985)).

For present purposes, the Court will presume that GNOFCU had a duty to Plaintiff to post signs warning passers-by that the lobby was a construction area and was off-limits. Even assuming such a duty, however, no reasonable factfinder could conclude that Plaintiff being assaulted by Brazley was a harm within the risk of breaching that duty. A business owner has a duty to post signs warning of a construction site to prevent passers-by from entering the site and injuring themselves on a construction hazard. No reasonable factfinder could find that it is a foreseeable harm within the risk of not posting signs that a passerby would enter the site, attempt to abscond with a dolly, be drawn into a confrontation with an off-duty police officer working a security detail, and suffer injuries by the alleged use of excessive force.

### III. CONCLUSION

Considering the foregoing, **IT IS ORDERED** that:

(1) the Motion to Dismiss (Rec. Doc. 27) is **DENIED WITHOUT PREJUDICE** as to Plaintiff's state law claims for false arrest and malicious prosecution;

(2) the Motion to Dismiss is **GRANTED** as to Plaintiff's federal § 1983 claims for false arrest and malicious prosecution;

(3) the Motion to Dismiss is **GRANTED** as to Plaintiff's *Monell* municipal liability claims arising from Plaintiff's § 1983 claims for false arrest and malicious prosecution; and

(4) GNOFCU's Motion for Summary Judgement (Rec. Doc. 12) is **GRANTED** and GNOFCU is **DISMISSED WITH PREJUDICE** as a party to the instant suit.

New Orleans, Louisiana, this 4th day of August, 2009.

_____
KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE